**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NEW ENGLAND PA LLC,<br>Plaintiff,<br>-against-<br>UMR, INC.,<br>Defendant. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff New England PA LLC("Plaintiff"), by and through its attorneys, Gottlieb & Greenspan, LLC, by way of Complaint against UMR, Inc. ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a medical provider that specializes in plastic and reconstructive surgery with its principal place of business located at 5 Davies Road East, Old Lyme, Connecticut 06371. At all relevant times, Plaintiff was an out-of-network, or non-participating, healthcare provider that provided medical and surgical services to one (1) patient[1] who is covered under healthcare plans sponsored, funded, operated, controlled and/or administered by Defendant.

2. Upon information and belief, Defendant maintains its principal place of business at! 115 W. Wausau Avenue, Wausau, Wisconsin, 54401, and is engaged in providing and/or administering health care plans or policies in the State of Connecticut,

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the No Surprises Act ("NSA"), 42 U.S.C. § 300gg-

[1] To comply with HIPPA confidentiality and patient privacy, each patient will be identified herein only by initials.

111 *et seq*., which governs the Independent Dispute Resolution ("IDR") process for certain out-of-network billing disputes including those at issue here.

4. Venue is proper in the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred within this district.

## **FACTUAL BACKGROUND**

5. At all relevant times, Plaintiff was an out-of-network, or non-participating, health provider that rendered medical and surgical services to the Patient.

6. At all relevant times, Defendant provided the Patient with out-of-network coverage and/or emergency services coverage, thus permitting the Patient to seek treatment from Plaintiff.

7. Plaintiff required the Patient to complete forms or other documents providing their insurance information. Plaintiff also generated medical records detailing the procedures performed, including operative reports and insurance claim forms referencing the amounts due. Thereafter, Plaintiff submitted timely and appropriate claims to Defendant that include the required information and supporting documents.

8. Defendant is obligated to provide reasonable and appropriate reimbursement for out-of-network and/or emergency services in accordance with applicable state and federal law. Because Plaintiff's services were rendered emergently and/or inadvertently in a participating network facility, reimbursement for those services is governed, in part, by the No Surprises Act ("NSA"), which establishes a framework for determining reimbursement for certain out-of-network services. *See* 42. U.S.C. §300gg-111 *et seq.*

9. The NSA became effective January 1, 2022. The NSA creates for medical providers a direct right to payment from insurers and health plans of the amount an IDR entity determines is owed for qualifying medical services. *See* 42 U.S.C. § 300gg-111(c)(6).

10. The NSA precludes medical providers from billing Patient for amounts beyond applicable in-network cost-sharing obligations and establishes a process for determining appropriate reimbursement for out-of-network services. Under that process, when an issuer makes an initial payment or denial of payment and the provider disputes that amount, the parties must engage in a period of negotiation. If the dispute is not resolved by the end of the negotiation period, either party may initiate an Independent Dispute Resolution ("IDR") proceeding before a neutral third-party certified IDR entity ("CIDRE"), which evaluates the parties' submissions and selects one proposed payment amount as the appropriate reimbursement. The non-prevailing party is then required to remit payment consistent with that determination within thirty (30) days of the IDR entity's determination. *See* 42 U.S.C. §300gg-111(c)(6).

11. As an OON medical provider, Plaintiff does not have a network contract that would determine or limit payment for Plaintiff's services to Defendant's member.

12. However, since the medical treatment was rendered in participating network facilities and/or emergently, the Patient's treatment is subject to the reimbursement protocols of the NSA, 42 U.S.C. § 300gg-111 *et seq.*

13. Plaintiff disputed Defendant's nonpayment and initiated the open negotiation period called for by the NSA by sending Open Negotiation letters to Defendant.

14. Because the dispute was not resolved by the close of the open negotiation periods, Plaintiff initiated the NSA's IDR process by submitting a Notice of IDR Initiation to the

Department of Health and Human Services to have the proper reimbursement amount determined by certified IDR entities ("CIDRE"). 42 U.S.C. § 300gg-111(c)(1-5).

15. Plaintiff forwarded a copy of the Notice of Initiation to Defendant as required.

16. To initiate the IDR process, Plaintiff was required to access the federal IDR portal and affirmatively accept binding click-wrap terms and conditions governing participation in the IDR process.

17. To participate in the IDR process through the submission of a Notice of Offer, Defendant was required to access the federal IDR portal and accept the same binding click-wrap terms and conditions agreed to by Plaintiff. Specifically, Defendant was required to affirmatively manifest its assent to the terms and conditions of the IDR process by clicking an "I Agree," "Accept," or similarly worded button or checkbox at the bottom of the Notice of Offer.

18. Those terms required Defendant to agree in part:

a. that the final payment determination made by the certified IDR entity is binding upon the parties; and

b. to pay the outstanding amount (if any) of the out-of-network rate that is Defendant's responsibility as determined by the certified IDR entity.

19. Defendant could not proceed with its IDR submission without accepting the terms and conditions set forth in the Notice of Offer.

20. While Plaintiff made repeated and exhaustive efforts to address Defendant's systematic failure to issue proper payment and/or comply with state and federal law, Defendant has refused to remit payment consistent with the IDR determination.

21. The District of Connecticut has held that it has federal question jurisdiction under the NSA, and that a provider may seek confirmation of an IDR award in federal court under the NSA. *See Agag v Cigna Health & Life Insurance Co.,* 2026 U.S. Dist. LEXIS 82515, at *2. The District of Connecticut has also held that the NSA provides an implied private right of action for

providers to seek confirmation in federal court. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 229 (D. Conn. 2025).

22. In the alternative, the NSA does not preclude a provider from bringing a suit under traditional state-law causes of action, such as unjust enrichment. *See Mod. Orthopedics of NJ v. Premera Blue Cross*, 2025 U.S. Dist. Lexis 215824, at *23 (D.N.J. Nov. 3, 2025). "Far from expressing preclusive intent, the NSA's preemption clause is clear:

> [The NSA] shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with individual or group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement of [the NSA.]

42 U.S.C. § 300gg-23. The IDR is an opt-in process, it provides an alternative, streamlined route to determine the amount owed between the parties – it does not displace traditional state-law remedies like unjust enrichment. *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 CIV, 432, 2025 WL 1725147, at *8-9 (S.D.N.Y. June 20, 2025) (holding breach of contract and unjust enrichment claims for failure to pay for patient emergency care were not preempted by the NSA)." *Id.*

23. Plaintiff's claims are not predicated on an assignment of benefits from the Patient. Because the NSA protects a patient from balance billing, the patient has not sustained any damage and therefore does not have an Employee Retirement Income Security Act ("ERISA") cause of action (or any other) to assign to Plaintiff.

24. Plaintiff seeks damages due to Defendant's actions.

25. On March 8, 2023, Plaintiff provided medical treatment to an individual identified as S.B. ("Patient S.B.") at River Valley Ambulatory Surgical Center, located in Norwich, Connecticut, and expected appropriate payment. At the time of treatment, Patient S.B. was a member of a health plan insured and/or administered by Defendant.

26. After treating Patient S.B., Plaintiff submitted a Health Insurance Claim Form ("HCFA") medical bill to Defendant seeking payment for the medical treatment in the amount of $30,000 for one unit of Current Procedural Terminology ("CPT") code 19318-LT-AS.

27. In response to Plaintiff's HCFA, Defendant denied any payment to Plaintiff for medical treatment rendered for one unit of CPT code 19318-LT-AS.

28. On May 15, 2025, the CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-1951959 awarding Plaintiff $22,500.00 for CPT code 19318-LT-AS *See* **Exhibit A**, attached hereto.

29. As of the date of this Complaint, 456 days have elapsed since Defendant's deadline to submit payment of the IDR determination.

30. In response to the above IDR determination, Defendant has yet to make any payments to Plaintiff, leaving $22,500.00 still due and owing for medical services provided to Patient R.M.

31. Accordingly, Plaintiff has been denied not only the billed amount of $30,000.00, but it has not been paid the duly awarded amount of $22,500.00 for Patient S.B.

32. While Plaintiff made repeated and exhaustive efforts to address Defendant's systematic failure to issue proper payment and/or comply with state and federal law, Defendant has refused to remit payment consistent with the IDR determination.

33. Accordingly, Plaintiff seeks herein the unpaid past due IDR determination (the "Award") as of the date the Court issues judgment, including interest, penalties and collection costs, which are in no event less than $22,500.00.

## COUNT ONE

## CONFIRMATION OF IDR DETERMINATION

34. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 33 of the Complaint as though fully set forth herein.

35. The NSA provides that "A determination of a certified IDR entity under subparagraph (A)—(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; . . ." 42 U.S. Code § 300gg-111(c)(5)(E)(i).

36. Defendant did not present any facts to the IDR entity concerning an alleged fraudulent claim or misrepresentation of facts.

37. Defendant did not move to vacate the Award under 9 U.S.C. § 10(a)(1)-(4) as provided for in the NSA.

38. Defendant failed to issue the IDR determination payment in satisfaction of the Award.

39. Confirmation of the Award does not require judicial review of the factual or legal findings of the IDR determination.

40. Absent a motion to vacate, the Award must be confirmed. *See, e.g., Agag v. Cigna Health and Life Insurance Co.,* No. 3:25-cv-00498, 2026 U.S. Dist. LEXIS 82515 (D. Conn. April 15, 2026).

41. It is against equity and good conscience to deprive Plaintiff a remedy to enforce "binding" Award issued in accordance with federal law.

42. Accordingly, Plaintiff brings this action for an Order confirming the IDR Awards.

## COUNT TWO

**VIOLATION OF THE FEDERAL NO SURPRISES ACT REGARDING THE NON-PAYMENT OF BINDING AWARD**
**(*in the alternative)***

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44. A party is permitted to initiate the IDR process called for by the NSA if the parties are unable to agree on a payment rate during the NSA's negotiation period. 42 U.S.C. § 300gg-111(c)(1-5).

45. In the instant case, the parties were unable to agree on the out-of-network rate for the services provided, and the parties therefore proceeded to arbitration as called for by the NSA.

46. On May 15, 2025, Maximum Federal Services, Inc., issued an IDR determination awarding Plaintiff $22,500.00 in DISP-1951959, amounting to 22,500.00 over the initial lack of payment.

47. According to the NSA, Defendant had thirty (30) days to remit the IDR determination payment to Plaintiff. 42 U.S.C. § 300gg-111(c)(6).

48. Defendant failed to make any payment within thirty (30) days and, as of the date of the filing of this Complaint, Defendant has failed to remit the IDR determination payment to Plaintiff.

49. As such, Defendant has failed to comply with the requirements of the NSA.

50. Accordingly, due to Defendant's failure to comply with the NSA's requirements, Plaintiff seeks damages of no less than $22,500.00, declaratory relief, costs, and any other just and proper relief available.

## COUNT THREE

**BREACH OF EXPRESS CONTRACT (CLICK-WRAP)**
**(*in the alternative)***

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 of the Amended Complaint as though fully set forth herein.

52. Plaintiff initiated the NSA's IDR process by submitting a Notice of IDR Initiation to the Department of Health and Human Services via the NSA's federal IDR portal.

53. Thereafter, the parties were presented with IDR participation terms, including the federal IDR portal's Terms of Use and the CIDRE's participation agreement, which required the parties' consent to be bound by the CIDRE's final payment determination and to pay the amount determined by the CIDRE. Each party was required to accept the NSA's IDR participation terms prior to submitting an IDR offer, uploading documents and proceeding with the IDR process.

54. Defendant provided affirmative consent to the IDR's participation terms by checking a box and/or clicking "I agree."

55. The parties' mutual agreement to accept and comply with the CIDRE's determination is sufficient consideration.

56. The CIDRE issued a written final determination in DISP-1951959 awarding Plaintiff $22,500.00 for the medical services Plaintiff rendered to Defendant's member.

57. Under the express terms of the click-wrap agreement, Defendant was required to pay the Award.

58. Defendant failed to pay the Award.

59. To date, Defendant has not paid the Award.

60. The NSA does not preempt a claim for breach of contract. *See Mod. Orthopaedics of NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS

215824, at * 32 (D.N.J. Nov. 3, 2025) (citing *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 CIV. 432, 2025 U.S. Dist. LEXIS 117870, 2025 WL 1725147, at * 8-9 (S.D.N.Y. June 20, 2025) (holding breach of contract and unjust enrichment claims for failure to pay for patient's emergency care were not preempted by the NSA).

61. The click-wrap agreement constitutes a valid, express contract under Connecticut law, supported by mutual consideration, including Plaintiff's opportunity to obtain binding dispute resolution and Defendant's participation in the NSA's IDR process and agreement to be bound by the outcome.

62. Defendant breached the express click-wrap contract by failing to pay the amount determined by the CIDRE.

63. Defendant's failure to pay the Award constitutes a material breach of contract.

64. Plaintiff seeks damages, declaratory relief, costs, and any other just and proper relief available.

## COUNT FOUR

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(*in the alternative)***

65. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 of the Complaint as though fully set forth herein.

66. The click-wrap agreement constitutes a valid, express contract under Connecticut law governing the parties' agreement to participate in the NSA's IDR process and to pay the Award as determined by the CIDRE.

67. Defendant acted in bad faith by refusing to pay the Award as determined by the CIDRE despite its agreement to be bound by the CIDRE's final payment determination.

68. Defendant's conduct was undertaken to avoid its payment obligations and to delay or frustrate Plaintiff's right to receive payment.

69. Defendant's actions deprived Plaintiff of the benefit of its bargain.

70. Plaintiff suffered damages in the unpaid Award as determined by the CIDRE.

71. Plaintiff seeks damages, declaratory relief, costs, and any other just and proper relief available.

## COUNT FIVE

## THIRD-PARTY BENEFICIARY
**(*in the alternative*)**

72. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 71 of the Complaint as though fully set forth herein.

73. The IDR process established under the NSA requires both providers and insurers to enter into binding agreements with the Centers for Medicare and Medicaid Services ("CMS") as a condition of participation.

74. These agreements require both parties to be bound by the payment of the CIDRE determination.

75. The click-wrap agreement with CMS for the IDR process is expressly intended to benefit both healthcare providers and healthcare insurance carriers by ensuring fair and enforceable reimbursement for medical services rendered.

76. The requirement that providers who prevail in the IDR process be paid in accordance with IDR determination demonstrates that healthcare providers were intended, not incidental, beneficiaries of Defendant's click-wrap agreement.

77. Plaintiff is a member of the class of intended beneficiaries of Defendant's click-wrap agreement with CMS.

78. Defendant's refusal to comply with the binding IDR determination frustrates the purpose of the click-wrap agreement and deprives Plaintiff of the benefits intended to be conferred.

79. Accordingly, Plaintiff is entitled to enforce Defendant's obligations as an intended third-party beneficiary.

80. Plaintiff seeks damages, declaratory relief, costs, and any other just and proper relief available.

## COUNT SIX

### DECLARATORY JUDGMENT
***(in the alternative)***

81. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 80 of the Complaint as though fully set forth herein.

82. An actual and present controversy exists between Plaintiff and Defendant concerning Defendant's obligation to pay the Award as determined by the CIDRE.

83. By refusing to pay the Award despite demands, Defendant seemingly contends that it is not required to do so, or that payment may be delayed or avoided, notwithstanding the CIDRE's final determination.

84. Defendant is obligated to pay the amount determined by the CIDRE and there is no appeal, complaint, or administrative process that stays Defendant's payment obligations.

85. A declaratory judgment would resolve the parties' dispute and clarify their respective rights and obligations.

86. Plaintiff seeks a declaration that Defendant is obligated to pay the Award as determined by the CIDRE in full and without delay.

**COUNT SEVEN**

**ACCOUNT STATED**
***(in the alternative)***

87. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 86 of the Complaint as though fully set forth herein.

88. Plaintiff rendered medical treatment to Defendant's member for which Defendant was financially responsible.

89. Plaintiff submitted HCFAs to Defendant reflecting amounts due for the medical treatment it rendered to Defendant's member.

90. After the parties failed to resolve the payment dispute at the close of the open negotiation periods as described herein, Plaintiff initiated the NSA's IDR process.

91. The CIDRE issued a written final determination establishing the amount Defendant owed to Plaintiff for the medical services it rendered to Defendant's member.

92. Defendant received the CIDRE's written final determination and did not move to vacate any of the Award, as provided for under the under the parameters described in paragraphs (1) through (4) of section 10(a) of title 9. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

93. Defendant's failure to seek recourse under 9 U.S.C. § 10(a) constitutes an implied agreement that the CIDRE's final determination pursuant to the Award are correct.

94. Defendant has failed to pay the Award as determined by the CIDRE.

95. Plaintiff seeks damages, declaratory relief, costs, and any other just and proper relief available.

## COUNT EIGHT

**QUANTUM MERUIT**
**(*in the alternative*)**

96. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 95 of the Complaint as though fully set forth herein.

97. Plaintiff conferred a valuable benefit upon Defendant by providing good faith medical services to Defendant's member at Plaintiff's expense, with the reasonable expectation of payment.

98. Defendant accepted and retained the benefit from the medical services Plaintiff provided as its member received medical services under the health plan Defendant administers.

99. Defendant had reasonable notice that Plaintiff expected payment for the medical services provided to Defendant's member as it received HCFAs from Plaintiff that set forth the amount billed for the medical services provided. Defendant appreciates, realizes and knows that Plaintiff expected payment for the medical services provided to its member because it issued an Explanation of Benefit form ("EOB").

100. The final determination made by the CIDRE reflects an objective, federally regulated assessment of the reasonable value for the medical services Plaintiff rendered to Defendant's member.

101. Defendant has failed to pay the Award as determined by the CIDRE, or any amount approximating the reasonable value for the medical services Plaintiff rendered to Defendant's member.

102. It would be unjust and inequitable for Defendant to retain the benefit of Plaintiff's medical services without paying the reasonable value as determined by the CIDRE.

103. Plaintiff is therefore entitled to recover under the doctrine of quantum meruit the reasonable value of the services rendered as determined by the CIDRE.

104. Plaintiff seeks damages, declaratory relief, costs, and any other just and proper relief available.

## COUNT NINE

**UNJUST ENRICHMENT**
**(*in the alternative*)**

105. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 104 of the Complaint as though fully set forth herein.

106. Defendant received the benefit of the underlying medical services Plaintiff rendered to Defendant's member. These medical services were provided at Plaintiff's expense and under circumstances that would make it unjust for Defendant to retain the benefit without commensurate compensation.

107. Defendant had reasonable notice that Plaintiff expected payment for the benefits conferred as it received HCFAs from Plaintiff that set forth the amount billed for the medical services Plaintiff rendered to Defendant's member. Defendant appreciates, realizes and knows that the benefit was conferred because it issued EOBs. Thus, there was a direct connection between Plaintiff's impoverishment and Defendant's enrichment.

108. The dispute over the value of the benefits received was resolved in accordance with the NSA's IDR process, which requires the non-prevailing party to issue payment within 30 days of the determination made by the CIDRE.

109. Defendant improperly retained the benefits under the plans without payment to Plaintiff.

110. Defendant has continued to improperly retain the required payment for the services Plaintiff rendered to its member beyond the 30-day deadline, which allowed it to become further unjustly enriched by receiving interest and/or investment income because of the unlawful retention of the funds, which were unquestionably owed to Plaintiff.

111. It is against equity and good conscience to deprive Plaintiff of the funds Defendant owes, as determined by the CIDRE in accordance with federal law.

112. Plaintiff hereby seeks payment of the Award as determined by the CIDRE as well as all benefits obtained by Defendant because Defendant did not timely pay the amounts owed, including without limitation the interest or investment income generated by such funds.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order confirming the IDR award in DISP-1951959

B. For Judgment in the amount of $22,500.00.

C. Declaratory relief as requested;

D. Pre- and post-judgment interest;

E. Costs of suit; and

F. For such other and further relief as the Court may deem just and equitable.

Dated: August 14, 2026

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*

By: /s/ *Brett Burgs, Esq.*
Brett L. Burgs, Esq.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 735-0845
bburgs@gottliebandgreenspan.com